UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA,
        Plaintiff,

    v.

JUAN MORENO-PANTIGA,
        Defendant.

No. 2:18-cr-161-01

Judge Corker

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SENTENCE REDUCTION**

Moreno-Pantiga seeks a reduction in his term of imprisonment for various reasons.

(Doc. 1005, Motion.)  The United States responds within the time period specified by Standing

Order 21-09.  (*See* Doc. 1006, Notice.)  Moreno-Pantiga has not shown that any reduction would

be consistent with 18 U.S.C. §§ 3553(a) and 3582(c)(1)(A), so his motion should be denied.

**Factual Background**[1]

From 2015 until his arrest in July 2018, Moreno-Pantiga sold more than 4.5 kilograms of

actual methamphetamine.  (Doc. 358, Plea Agreement at ¶ 4(b), (g).)  Between December 2017

and July 2018, he sold more than 1.2 kilograms of methamphetamine to a confidential informant

in a series of 19 controlled transactions.  (*Id*. at ¶ 4(c).)  Agents later recovered 3.6 kilograms

of methamphetamine, 450 grams of cocaine, 41,750 grams of marijuana, four firearms, a high-

---

[1] Much of Moreno-Pantiga's "statement of the case" actually describes pleadings and
events regarding his co-defendant Cody Allen Arnold.  (*See generally* Doc. 1005, Motion at 3.)
As the court's docket makes clear, Moreno-Pantiga pleaded guilty on September 4, 2019, not on
November 7, 2019, when Arnold's plea agreement was docketed.  (*Compare* Doc. 424, Minute
Entry *with* Doc. 574, Arnold Plea Agreement.)  Similarly, Moreno-Pantiga was not sentenced
on February 14, 2020, but Arnold was; Moreno-Pantiga had already been sentenced in January
2020.  (*See* Docs. 733, 761, Minute Entries.)  Finally, the motion for a lesser sentence under
Amendment 821 that was filed on February 12, 2024, and denied on May 10, 2024, involved
Arnold—not Moreno-Pantiga.  (*See generally* Doc. 928, Arnold Motion; Doc. 948, Order;
*contra* Doc. 1005, Motion at 3.)

capacity magazine, $29,765 cash, plastic baggies, and a scale from two properties controlled by Moreno-Pantiga. (*Id*. at ¶ 4(e).) And Moreno-Pantiga admitted that "one of the functions of the used car lot business was to shield his drug trafficking activity and launder the drug trafficking proceeds." (*Id*. at ¶ 4(f).)

Moreno-Pantiga ultimately pleaded guilty to two conspiracy offenses: a conspiracy to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. (*Id*. at ¶ 1.) The Court calculated the advisory guidelines range as 262 to 327 months' imprisonment, then sentenced Moreno-Pantiga to 262 months in prison. (Doc. 740, Judgment; Doc. 741, Sealed Statement of Reasons.) Moreno-Pantiga is currently expected to complete that sentence in April 2036. (Exhibit 1, Sentence Computation Data at 3.)

## Legal Framework

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). And "once [it] has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013); *accord Dillon v. United States*, 560 U.S. 817, 825 (2010).

One statute that authorizes sentence modifications is 18 U.S.C. § 3582(c)(1)(A). Under that provision, a defendant must ask the Bureau of Prisons to file such a motion on his behalf, then "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or wait 30 days "from the receipt of such a request by the warden." 18 U.S.C. § 3582(c)(1)(A). Three substantive requirements must also be satisfied. *United States v. Ruffin*, 978 F.3d 1000, 1004-05 (6th Cir. 2020). This Court must find that "extraordinary

and compelling reasons warrant such a reduction,"[2] find that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and consider the 18 U.S.C. § 3553(a) factors "to the extent . . . applicable." *Id*. "[C]ourts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). And a court "must deny a defendant's motion if the defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction." *United States v. McKinnie*, 24 F.4th 583, 586 (6th Cir. 2022).

As the movant, Moreno-Pantiga has the burden to prove his eligibility for relief. *E.g.*, *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990).

## Argument

1.  <u>Moreno-Pantiga has not proven that he satisfied the threshold exhaustion requirement.</u>

Moreno-Pantiga claims he "filed a request for compassionate release to the Warden at FCI Ashland" at least 30 days before filing a motion with this Court (Doc. 1005, Motion at 11), but he did not attach a copy of that request, nor provide any other information about when it was allegedly submitted. And the Bureau of Prisons reports that FCI Ashland never received any such request from Moreno-Pantiga. (Exhibit 1, BOP Email.) Failure to satisfy the statutory exhaustion requirement ordinarily interposes a "glaring roadblock" to judicial review. *United States v. Alam*, 960 F.3d 831, 835-36 (6th Cir. 2020).

---

[2] Alternately, a defendant may be eligible for relief if he "is at least 70 years of age, has served at least 30 years in prison . . . for the . . . offenses for which [he] is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that [he] is not a danger to the safety of any other person or the community . . . ." 18 U.S.C. § 3582(c)(1)(A)(ii). Moreno-Pantiga is too young and has served too little time in federal custody to meet that standard. (*See* Exhibit 1, Sentence Computation Data at 1, 3.)

3

Although a court may not *grant* a motion for compassionate release unless the exhaustion requirement has been satisfied, it "is free to *deny* such a motion for any reason that is supported in the record." *United States v. Williams*, 987 F.3d 700, 702 (7th Cir. 2021) (emphasis added); *accord United States v. Vargas*, 854 F. App'x 70 (7th Cir. 2021) (finding that a court "may deny a request on the merits without transgressing the statutory exhaustion requirement"); *United States v. Hamilton*, 859 F. App'x 41, 42 (9th Cir. 2021) (finding harmless error in the denial of a compassionate-release motion based on § 3553(a) factors despite non-exhaustion).

2.    Moreno-Pantiga has not established any extraordinary and compelling reason.

Controlling circuit precedent holds that nonretroactive legal developments are not extraordinary and compelling, nor do they even "factor into the . . . analysis." *United States v. McCall*, 56 F.4th 1048, 1066 (6th Cir. 2022) (*en banc*).  The Sentencing Commission, however, suggested that a court may consider "a change in the law" to be an extraordinary and compelling reason for a lesser sentence if that change "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" *and* if the defendant originally "received an unusually long sentence" *and* if the defendant has already served at least 10 years in custody.  U.S.S.G. § 1B1.13(b)(6).  Moreno-Pantiga has not yet served 10 years in custody, so he cannot possibly benefit from § 1B1.13(b)(6).[3]

_____

[3] Moreover, the Sixth Circuit recently held that "U.S.S.G. § 1B1.13(b)(6) is invalid." *United States v. Bricker*, 135 F.4th 427, 430, 438 (6th Cir. 2025).  Five other circuits reached the same conclusion.  *United States v. Rutherford*, 120 F.4th 360, 380 (3d Cir. 2024); *United States v. Austin*, 125 F.4th 688, 691-692 (5th Cir. 2025); *United States v. Black*, 131 F.4th 542, 543 (7th Cir. 2025); *United States v. Crandall*, 25 F.4th 582, 585-586 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-200 (D.C. Cir. 2022).  But four circuits asserted that legal developments can form part of an "individualized assessment[]" of whether "extraordinary and compelling reasons" exist in a particular defendant's case.  *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *accord United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d

Nor has Moreno-Pantiga identified any change in the law that would yield any disparity, much less a "gross disparity," between his existing sentence and the one he would likely receive today. Instead, he claims that, if "prosecuted after passage of the Fair Sentencing Act" and then sentenced today, "after the passage of the First Step Act," his sentence would be based on a lesser drug quantity because of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). (Doc. 1005, Motion at 13, 15, 17 (also referencing "cocaine base," though he was only convicted of a methamphetamine offense).) In fact, Moreno-Pantiga *was* prosecuted after the Fair Sentencing Act took effect and sentenced after the First Step Act took effect, and he also received the full benefit of *Apprendi* and *Alleyne*. Those cases stand for the proposition that any fact (other than the fact of a prior conviction) that increases the statutory penalty for an offense must be proven to a jury beyond a reasonable doubt or admitted by the defendant. *Apprendi*, 530 U.S. at 477; *Alleyne*, 570 U.S. at 114-15. Here, Moreno-Pantiga's 262-month sentence did not exceed the statutorily authorized penalties for the charged drug offense (10 years to life imprisonment). He was charged with, and pleaded guilty to, conspiring to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). (Doc. 3, Indictment at 1-2; Doc. 358, Plea Agreement at ¶ 1.) He also stipulated that he was responsible for at least 4.5 kilograms of methamphetamine, and that quantity was used to calculate his guideline range. (*See* Doc. 358, Plea Agreement at ¶ 4(g); Doc. 639, Sealed Presentence Report at ¶¶ 17, 25.) In short, Moreno-Pantiga has not proven any disparity between his existing sentence and his likely sentence today. So even if § 1B1.13(b)(6) were valid—and controlling caselaw says it is not—it would not help him.

---

1035, 1047-48 (10th Cir. 2021). The Supreme Court thus granted certiorari to resolve that circuit split. *See Rutherford v. United States*, No. 24-820, 2025 WL 1603603 (U.S. June 6, 2025), and *Carter v. United States*, No. 24-860, 2025 WL 1603599 (U.S. June 6, 2025).

Moreno-Pantiga also alleges a disparity between his sentence and those of various co-defendants. (Doc. 1005, Motion at 16.) But a claim of sentencing disparity is "an unconventional ground for challenging a *within-guidelines* sentence," and reducing such a sentence is "more likely to create disparities than eliminate them," *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011) (emphasis in original), because 18 U.S.C. § 3553(a)(6) is concerned with unwarranted disparities nationwide, not disparities between co-defendants. *E.g.*, *United States v. Tanner*, 382 F. App'x 421, 428 (6th Cir. 2010). The Sentencing Guidelines exist precisely so that similarly-situated individuals are treated similarly. *United States v. Kirchhoff*, 505 F.3d 409, 416 (6th Cir. 2007). So accurate calculation of the applicable guideline range "necessarily take[s] into account the need to avoid unwarranted sentence disparities, viewed nationally," *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021), and Moreno-Pantiga has not even alleged any error in the calculation of his guideline range. Nor can he establish an extraordinary and compelling reason based on his belief his sentence is too long; nearly every defendant thinks a lesser term of imprisonment would be sufficient. As for Moreno-Pantiga's suggestion that the Court "should find that a sentence of less than 120 months is sufficient" (Doc. 1005, Motion at 19-20), he overlooks the fact that 120 months was mandated by statute.

In sum, Moreno-Pantiga has not established any extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

3.    In any event, the § 3553(a) factors weigh against reducing Morena-Pantiga's sentence.

Moreno-Pantiga's offenses were unquestionably serious, in that he conspired to distribute at least 4.5 kilograms of methamphetamine and laundered the proceeds. The Court calculated the applicable guideline range as 262 to 327 months' imprisonment and sentenced Moreno-Pantiga to 262 months in prison. (Doc. 740, Judgment; Doc. 741, Sealed Statement of Reasons.)

6

So far, Morena-Pantiga has served nearly 90 months in custody (Exhibit 1, Sentence Computation Data at 3), and "the amount of time served is relevant to several § 3553(a) factors." *United States v. Kimball*, 988 F.3d 945, 947 (6th Cir. 2021) (citing *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020)). While in custody, Morena-Pantiga has incurred disciplinary sanctions twice—most recently in May 2024. (Exhibit 3, Disciplinary Record.) To his credit, he earned his GED in custody, and the Bureau of Prisons now considers him a minimum risk of recidivism, *i.e.*, the lowest level on its four-level scale. (Exhibit 4, Inmate Profile.)

Reducing Morena-Pantiga's sentence at this time would be inconsistent with the § 3553(a) factors, especially "the nature and circumstances of the offense[s]," § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense[s], to promote respect for the law, and to provide just punishment," § 3553(a)(2)(A); "the sentencing range established" by the Guidelines (here, 262 to 327 months), § 3553(a)(4); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6). Moreover, any sentence reduction would result in his transfer to the custody of Immigration and Customs Enforcement, which has lodged a detainer against him. (Exhibit 1, Sentence Computation Data at 4.) *See United States v. Ardila*, No. 3:03-CR-264, 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (noting that release from BOP custody does not exempt a defendant from custody required by a pending detainer).

**Conclusion**

Moreno-Pantiga has not established that any sentence reduction would be consistent with U.S.S.G. § 1B1.13 and 18 U.S.C. §§ 3553(a) and 3582(c)(1)(A), so his motion should be denied.

Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

By:     *s/ J. Christian Lampe*
J. CHRISTIAN LAMPE
Assistant U.S. Attorney
CO Bar No.: 34361
220 W. Depot Street, Suite 423
Greeneville, Tennessee 37743
christian.lampe@usdoj.gov
(423) 639-6759

**Certificate of Service**

I certify that, on January 23, 2026, this response was filed electronically and a true copy was sent to defendant by regular United States mail, postage prepaid, addressed as follows:

Juan Moreno-Pantiga
No. 53717-074
F.C.I. Ashland
P.O. Box 6001
Ashland, KY  41105

*s/ Christian Lampe*
J. Christian Lampe
Assistant United States Attorney